UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARK MILLER, | Case No. 3:16-cv-00128-MMD-VPC |
| Plaintiff, | ORDER |
| v. | |
| DAVID EVERETT et al., | |
| Defendants. | |

## I.  DISCUSSION

On June 27, 2016, this Court issued a screening order on the first amended complaint ("FAC"). (ECF No. 6, 7.) The screening order permitted Plaintiff's conditions of confinement, deliberate indifference to serious medical needs, and retaliation claims to proceed. (ECF No. 6 at 10.) With respect to Plaintiff's motion for preliminary injunction, the Court deferred a decision and directed Defendants to file a response. (*Id.* at 10-11.) According to Plaintiff, he is a 60-year old throat cancer survivor who is housed at the Northern Nevada Correctional Center's Regional Medical Facility ("NNCC") because he requires 24-hour a day medical supervision. (ECF No. 7 at 10.) In the motion for preliminary injunction, Plaintiff argued that his conditions of confinement constantly put him at "risk of imminent harm that could ultimately result in his being incapacitated and/or suffering an untimely death from suicide." (ECF No. 4 at 3.) In the screening order, the Court stated that it was "unclear . . . whether Plaintiff [was] currently in the hole. If Plaintiff [was] currently in the hole, then it appear[ed] that he

[could] suffer severe medical consequences absent 24-hour medical supervision due to his trach tube and respiratory problems." (ECF No. 6 at 10.)

In his reply to the motion for preliminary injunction, Plaintiff asserted that, on July 26, 2016, at 2:30 a.m., he had vomited dark brown liquid from his stomach and choked hard enough for the vomit to back up into his throat. (ECF No. 17 at 12.) Plaintiff had been "so intensely weak and dizzy" that he had to lay there in his own excrement for five hours until he was physically able to get out of bed and clean himself off. (*Id.*) Plaintiff asserted that it "does [him] no good to hit his intercom button that late on the graveyard shift because he hasn't been getting an answer on his cell speaker." (*Id.*) Plaintiff argued that, "even if the [correctional officers] did answer and call a 'man down' . . . he would easily choke to death by the time the clinic nurses got there." (*Id.*) Plaintiff did not have his suction equipment with him because Warden Baca confiscated the equipment when Plaintiff moved to the hole. (*Id.* at 12-13.) Plaintiff sought to be moved back to the Unit 8A medical unit, to acquire general population status, to be single-celled in Unit 8A, and for the problem inmate to be transferred to another facility. (*Id.* at 13-14.)

The Court ordered Defendants to provide a supplemental response on the issue of providing Plaintiff with emergency medical care while in administrative segregation. (ECF No. 19 at 4.) The Court noted that it was concerned with the allegation that, "on July 26, 2016, Plaintiff did not interact with prison or medical officials during the five-hour period that Plaintiff alleges that he was too weak to push the intercom button in his administrative segregation cell after choking on his own vomit." (*Id.*) The Court directed Defendants to also address the issue of Plaintiff's sucking equipment. (*Id.*)

In their supplemental response, Defendants first argue that the events alleged on July 26, 2016, are outside the scope of Plaintiff's FAC and, thus, it is inappropriate for the Court to grant injunctive relief to Plaintiff. (ECF No. 21 at 2-3.) Defendants assert that Plaintiff cannot demonstrate a likelihood of success on the merits on this issue because this issue was not raised in the FAC. (*Id.* at 3.) Second, Defendants argue that

Plaintiff does have access to emergency medical care because there is always a doctor and nurse on call 24 hours a day. (*Id.*). Further, Defendants assert that Plaintiff never reported any incident to custody staff and only alerted medical staff when he saw a nurse at sick call on July 27, 2016. (*Id.*) The nurse's medical notes from July 27, 2016, state that Plaintiff complained of vomiting the night before and that Plaintiff had changed his trach cannula. (ECF No. 22-1 at 2). The nurse examined the cannula and noted that it was clean and that Plaintiff's lungs sounded clear. (*Id.*) Defendants note that Plaintiff did not file any grievances on this issue. (*Id.* at 4.) Finally, Defendants assert that Plaintiff never had his own suction equipment but rather had been given the equipment on one or two occasions to help him clear his secretion. (*Id.*) In support of their supplemental response, Defendants have provided the declaration of NNCC Director of Nursing Theresa Wickham, Plaintiff's medical chart from July 27, 2016,[1] and Plaintiff's grievance history. (ECF No. 21-1, 21-3, and 22-1).

In his reply, Plaintiff asserts that he did raise this issue in his FAC. (ECF No. 26 at 2.) Plaintiff also asserts that Theresa Wickham's declaration is "blatantly false and misleading." (*Id.* at 3.) According to Plaintiff, he told Nurse Vannessa that he had been too weak and dizzy to get off his bunk and walk over to push the call button for assistance. (*Id.*) Plaintiff asserts that this was not an issue in Unit 8A because the intercom was by Plaintiff's bed and he could reach up to call for assistance. (*Id.* at 5.) Plaintiff contends that, even if he had used the call button, the nurses would not have arrived from the medical unit in time to save him from choking to death. (*Id.*) Plaintiff states that, on August 13, 2016, Plaintiff saw Dr. Naughter at the medical clinic. (*Id.*) Plaintiff told Dr. Naughter about the vomiting incident and Dr. Naughter determined that it was "medically necessary" to move Plaintiff back to Unit 8A. (*Id.*) Plaintiff asked Dr. Naughter if inmate Lucus was still in the isolation ward pounding on his door day and night. (*Id.* at 5-6.) Dr. Naughter told Plaintiff that Lucus was still there making noise. (*Id.*

---

[1] The Court grants Defendants' motion for leave to file Plaintiff's medical record under seal. (ECF No. 20).

3

at 6.) Plaintiff told Dr. Naughter that he could not take the sleep deprivation and stress caused by Lucus's noise. (*Id.*) Prison officials forced Plaintiff to sign a document noting Plaintiff's refusal to be moved back to Unit 8A. (*Id.*) Dr. Naughter told Plaintiff that his "hands were tied" concerning Lucus. (*Id.*)

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

The Court denies Plaintiff's motion for preliminary injunction. The Court finds that, based on the current pleadings, Plaintiff would not be able to establish deliberate indifference to serious medical needs for the events on July 26, 2016. In the FAC, Plaintiff generally claimed that he would "surely die" if he needed medical treatment in the hole. (ECF No. 7 at 15.) The Court was concerned with how Plaintiff was going to receive emergency medical care while in the hole and ordered Defendants to file a response to the motion for preliminary injunction. (ECF No. 6 at 9-10.) Based on the subsequent briefings, the Court finds that, through Plaintiff's own statements, he has not tried to use the intercom system for emergencies (during or after)[2] and has assumed that calling medical would be futile even though he has never called them. When prison officials did learn about Plaintiff's vomiting, Plaintiff met with Dr. Naughter who decided

///

---

[2] The Court recognizes that, based on the allegations, Plaintiff would be unable to push the intercom button during an emergency situation due to becoming too weak and dizzy to reach the intercom button.

that Plaintiff should be transferred back to the medical unit, Unit 8A. However, Plaintiff refused to return to the unit because of another inmate. This does not establish deliberate indifference to serious medical needs. As such, Plaintiff cannot establish a likelihood of success on the merits on this issue.

Moreover, the Court finds that the balance of equities does not tip in Plaintiff's favor because Plaintiff has not attempted to use NNCC's emergency intercom system and has refused to return to the medical unit which he originally sought to return. The Court finds that an injunction would not be in the public interest at this time because Plaintiff seeks to displace another medical/mental health inmate from the medical unit in order to facilitate his own return to the unit. As such, the Court denies the motion for preliminary injunction. (ECF No. 4).

## II.     CONCLUSION

For the foregoing reasons, it is ordered that the motion for preliminary injunction (ECF No. 4) is denied.

It is further ordered that the motion for leave to file medical record under seal (ECF No. 20) is granted.

DATED THIS 8th day of September 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE