**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK MILLER, | 3:16-cv-00128-VPC |
| Plaintiff, | |
| v. | **ORDER** |
| DAVID EVERETT, *et al.*, | |
| Defendants. | |

This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and LR IB 2-1. Before the court is defendants' motion for summary judgment (ECF Nos. 67, 69 (sealed)). Plaintiff opposed (ECF No. 76), and defendants replied (ECF No. 79). For the reasons stated below, the court grants defendant's motion for summary judgment (ECF No. 67).

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Mark Miller ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings this action against several NDOC and NNCC officials.

On June 27, 2016, the District Court screened plaintiff's first amended complaint, allowing three counts to proceed: 1) a conditions of confinement claim against defendants Everett, Keast, Baca, Eaton, Aranas, and Meares; 2) a deliberate indifference claim against defendants Everett, Keast, and Baca; and 3) a retaliation claim against defendants Everett, Keast, and Baca. (ECF No. 6.) On December 18, 2016, plaintiff filed a motion for leave to file a second amended complaint (ECF No. 41), which the court granted (ECF No. 43). Plaintiff's second amended complaint was filed on January 17, 2017 and asserts five claims (ECF No. 44). In Count I, plaintiff alleges that defendants Everett, Keast, Baca, Eaton, Aranas, and Mears had knowledge of excessive noise and failed to take corrective action in violation of his Eighth Amendment rights. (*Id.* at 6-10.)

Additionally, in Count I, plaintiff alleges that defendants Everett, Keast, and Baca had knowledge of his need for psychiatric care and refused to provide treatment in violation of his Eighth Amendment rights. (*Id.* at 10-11.) In Count II, plaintiff asserts that defendants Baca, Clark, and Henderson retaliated against him for filing grievances and pursuing litigation against them by putting him in the "hole" and charging him with disciplinary infractions in violation of his First Amendment rights. (*Id.* at 19-20.) In Count III, plaintiff alleges that defendants Sexton and Scholfield failed to ensure that he received care from a licensed psychiatrist in violation of his Eighth Amendment rights. (*Id.* at 21-22.) In Counts IV and V, plaintiff brings state law claims against all defendants pertaining to elder abuse and inhumane treatment. (*Id.* at 23-24.)

Defendants now move for summary judgment asserting that: (1) plaintiff failed to exhaust his administrative remedies in regards to his excessive noise claim; (2) plaintiff failed to exhaust his administrative remedies in regards to his mental health care claim against defendants Everett, Keast, and Baca; (3) defendants were not deliberately indifferent to plaintiff's complaints of excessive noise; (4) defendants were not deliberately indifferent to plaintiff's request for mental health treatment; (5) defendants Baca, Clark, and Henderson did not retaliate against plaintiff for filing grievances; (6) plaintiff fails to adequately plead his state law claims; (7) plaintiff failed to allege personal involvement of defendants Aranas and Eaton in regards to his Eighth Amendment claims; and (8) defendants are entitled to qualified immunity.[1] (*See* ECF No. 67.)

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over

---

[1] Because the court finds that plaintiff failed to exhaust his administrative remedies in regards to his Eighth Amendment claims against defendants Everett, Keast, Baca, Eaton, Aranas, and Meares, it need not address defendants' substantive arguments related to deliberate indifference or the supervisor liability of Aranas and Eaton. Further, because the court finds that defendants were not deliberately indifferent and did not retaliate against plaintiff, it need not address defendants' qualified immunity defense.

2

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts

that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III. DISCUSSION

### A. Civil Rights Claims Under § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Failure to Exhaust Administrative Remedies

#### 1. Exhaustion under the PLRA

Defendants argue that plaintiff did not properly exhaust available administrative remedies as to his Count I claims. (ECF No. 67 at 6-9.) The PLRA provides that "[n]o action shall be

brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendants bear the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendants make such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). When a remedy is essentially "unknowable" such that no reasonable inmate can make sense of what it demands, it is considered to be unavailable. *See Ross*, 136 S.Ct. at 1859-60.

**2.     NDOC's Inmate Grievance System**

The procedural rules relevant to exhaustion "are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218. The grievance process at NDOC institutions is governed by Administrative Regulation ("AR") 740.

NDOC's grievance process features three levels, beginning with the informal grievance. If an inmate is unable to resolve the issue through discussion with an institutional caseworker, the inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims," or within ten days for any other issues, including classification and disciplinary. AR

740.04, 740.05(4). The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." *Id.* at 740.05(8). NDOC staff is required to respond within forty-five days. *Id.* at 740.05(12). An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. *Id.*

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." *Id.* at 740.06(2). The grievance is reviewed by an official of a higher level, who has forty-five days to respond. *Id.* at 740.06(1), (4). Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. *Id.* at 740.07(1). Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. *Id.* at 740.07(3), (4). Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### 3. Exhaustion of Plaintiff's Count I Claim against Defendants Everett, Keast, Baca, Eaton, Aranas, and Meares regarding Excessive Noise

In the first portion of plaintiff's Count I claim, plaintiff asserts that defendants had knowledge of excessive noise levels in plaintiff's unit, but failed to take corrective actions. (ECF No. 44 at 6-10.) Defendants argue that plaintiff did not properly exhaust his available administrative remedies, as he failed to follow the grievance procedure outlined by AR 740. (*See* ECF No. 67 at 8.) Specifically, defendants contend that plaintiff failed to file a second level grievance after filing numerous unsuccessful informal and first level grievances, and thus failed to fully exhaust before filing his initial complaint. (*Id.*; *see also* ECF No. 67-8.) Plaintiff filed his informal grievance on November 6, 2015, his first level grievance on November 21, 2015, another first level grievance on January 24, 2016, and a second level on February 27, 2016. (*Id.*) Plaintiff filed his complaint on March 4, 2016. (*See* ECF No. 1-1.) Plaintiff does not dispute that he failed to file a second level grievance before initiating this lawsuit, but instead asserts that defendants answered the grievance on the merits at the first level, which effectively waived any procedural

defect and that he properly exhausted before filing his second amended complaint. (ECF No. 76 at 4-5.)

First, the court disagrees with plaintiff's argument that a response on the merits at the first level waives any procedural defects. In a recent Ninth Circuit decision, the Court held that "a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule[,] if prison officials ignore the procedural problem and render a decision on the merits of the grievance at *each* available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (emphasis added). Thus, to properly exhaust, plaintiff needed to fully grieve through the second, and final level of NDOC's grievance procedure. A response on the merits at the first level does not satisfy the requirements of exhaustion.

Next, plaintiff relies on *Rhodes v. Robinson (Rhodes II)*, to support his assertion that he "properly" exhausted his administrative remedies before filing his second amended complaint. (ECF No. 76 at 4 (citing *Rhodes v. Robinson (Rhodes II)*, 621 F.3d 1002 (9th Cir. 2010)).) In *Rhodes II*, the court held that exhaustion of *new* claims satisfies the requirements of the PLRA as long as exhaustion is completed prior to the filing of an amended complaint. *Rhodes II*, 621 F.3d at 1005-1006. Here, plaintiff's claims regarding excessive noise were first alleged in plaintiff's original complaint, filed on March 4, 2016 and therefore should have been exhausted prior to that date. Accordingly, the court finds that plaintiff failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Plaintiff provides no evidence to show that administrative remedies were unavailable to him. Plaintiff only asserts that defendants did not respond to his second-level grievance. However, plaintiff initiated this lawsuit on March 4, 2016,

just six days after his submitted his second level grievance and well before the sixty-day deadline to respond to his second-level grievance had lapsed. (ECF No. 67-16 at 8.)

While plaintiff may disagree with the requirement to exhaust his administrative remedies prior to initiating lawsuits, exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Id.* at 89 (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). Exhaustion also "promotes efficiency." *Id.* Plaintiff does not dispute that he failed to exhaust his administrative remedies and he does not present any evidence that such remedies were effectively "unavailable." Accordingly, the court concludes that plaintiff failed to exhaust available administrative remedies prior to filing this action as to his Count I excessive noise claims.

### 4. Exhaustion of Plaintiff's Count I Claim against Defendants Everett, Keast, and Baca regarding Psychiatric Care

In the second portion of plaintiff's Count I claim, plaintiff asserts that defendants had knowledge of his need for psychiatric care and refused to provide treatment. (ECF No. 76 at 10-11.) Plaintiff first raised this issue in his First Amended Complaint, filed on June 28, 2016. (ECF No. 7 at 9.) Plaintiff's first grievance related to this issue, # 20063028314, was filed on July 5, 2016. (ECF No. 67-19 at 2.) Defendants assert that because plaintiff failed to file his informal grievance until after the First Amended Complaint was filed, he did not properly exhaust his administrative remedies. (*See* ECF No. 67 at 9.) Again, the court agrees. Plaintiff was required to exhaust his administrative remedies prior to filing his complaint relating to the specific allegations. *See Rhodes II*, 621 F.3d at 1005-06. In this case, plaintiff should have fully exhausted prior to the date he filed his First Amended Complaint on June 28, 2016. Plaintiff failed to do so, and thus failed to exhaust his administrative remedies. The burden now shifts to plaintiff to show that these remedies were not available to him. *Albino*, 747 F.3d at 1172 (citing *Hilao*, 103 F.3d at 778 n. 5). Plaintiff again fails to provide evidence to show that administrative remedies were unavailable to him. Plaintiff failed to exhaust his administrative remedies and he does not present any evidence that such remedies were effectively "unavailable." Accordingly, the court concludes

that plaintiff failed to exhaust available administrative remedies prior to filing this action as to his Count I psychiatric care claims.

### C. Count II – First Amendment Retaliation Claim against Defendants Baca, Clark, and Henderson

Defendants argue that summary judgment should be granted in their favor as to the retaliation claim because it fails as a matter of law. (ECF No. 67 at 16-18.)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. If the plaintiff fails to allege that the retaliation had a chilling effect, he or she may still state a claim by alleging some other harm. *Id.* at 568 n.11.

#### 1. Defendant Baca

In Count II, plaintiff alleges that defendant Baca ordered him to be placed in the "hole" in retaliation for filing grievances and lawsuits. (ECF No. 44 at 19.) The court must consider whether the record, when viewed in the light most favorable to plaintiff, contains evidence from which a reasonable jury could conclude that defendant performed the adverse actions alleged. Defendants argue that it does not (ECF No. 67 at 16-17), and the court agrees.

The record includes a sworn declaration from defendant Baca (ECF No. 67-22). Defendant Baca asserts in his declaration that he did not retaliate against plaintiff for filing grievances or lawsuits. (*Id.* at 3.) Defendant Baca further asserts that he did not order plaintiff to be removed or discharged from the infirmary, but that medical staff discharged plaintiff to Unit 7A because he was not approved to go to the general population. (*Id.*) Further, defendant Baca asserts that he did not order plaintiff to be sent to the "hole." (*Id.*) An examination of plaintiff's case note report

indicates that the decision to move plaintiff from the infirmary was made by medical staff because plaintiff had "been discharged." (ECF No. 69-5 at 2.) There is no evidence in the record showing that defendant Baca placed plaintiff in the "hole."

Plaintiff fails to respond to defendant's argument in his opposition to defendants' motion for summary judgment. (*See* ECF No. 76.) Plaintiff's vague and conclusory allegations cannot carry plaintiff's burden in opposing defendant's sworn declaration at the summary judgment stage. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Accordingly, plaintiff has not shown that a material dispute exists as to whether defendant Baca performed the adverse action alleged, and summary judgment in defendant's favor is proper.

### 2. Defendant Clark

In Count II, plaintiff alleges that defendant Clark filed a notice of charges against him in retaliation for filing grievances and lawsuits against Baca. (ECF No. 44 at 19.) The court must consider whether the record, when viewed in the light most favorable to plaintiff, contains evidence from which a reasonable jury could conclude that defendants performed the adverse actions alleged. Defendants argue that it does not (ECF No. 67 at 17-18), and the court agrees.

The record includes a sworn declaration from defendant Clark (ECF No. 67-14). Defendant Clark asserts in his declaration that on June 7, 2016, plaintiff removed his own trach and feeding tubes, requiring him to be transported to the Carson Tahoe Regional Medical Facility for treatment. (*Id.* at 2.) Defendant Clark asserts that as a result of plaintiff's self-harm, there was a disruption to the normal operations of the facility, additional medical expenses and transportation costs were incurred, and overtime was required to provide additional coverage of plaintiff during his transport and time in the hospital. (*Id.*) Defendant Clark asserts that as a result of plaintiff's actions, Clark wrote a notice of charges, OIC #408968 for self-mutilation and unauthorized use of equipment. (*Id.*) Further, defendant Clark asserts that he was unaware of any grievances or lawsuits filed by plaintiff, and Clark wrote the notice of charges because plaintiff removed his own medical devices causing a disruption to the operation of the institution. (*Id.* at 2-3.) The record indicates that

plaintiff plead guilty to the self-mutilation charge, thus acknowledging that he violated prison rules. (ECF No. 67-15 at 2-3.)

Again, plaintiff fails to respond to defendant's argument in his opposition to defendants' motion for summary judgment. (*See* ECF No. 76.) Plaintiff's vague and conclusory allegations cannot carry plaintiff's burden in opposing defendant's sworn declaration at the summary judgment stage. *Nelson*, 83 F.3d at 1081-82. Accordingly, plaintiff has not shown that a material dispute exists as to whether defendant Clark performed the adverse action alleged, and summary judgment in defendant's favor is proper.

### 3. **Defendant Henderson**

In Count II, plaintiff alleges that defendant Henderson filed a notice of charges against him in retaliation for filing grievances and lawsuits against her and her coworkers. (ECF No. 44 at 20.) The court must consider whether the record, when viewed in the light most favorable to plaintiff, contains evidence from which a reasonable jury could conclude that defendants performed the adverse actions alleged. Defendants argue that it does not (ECF No. 67 at 18), and the court agrees.

The record includes a sworn declaration from defendant Henderson (ECF No. 69-2). Defendant Henderson asserts in her declaration that on May 16, 2016, she went to see plaintiff at his request. (*Id.* at 3.) Defendant Henderson states she observed plaintiff banging on his cell door window with a plastic trash can. (*Id.*) When defendant Henderson asked plaintiff how she could help, plaintiff proceeded to yell at Henderson and blame her for alleged mental health abuse. (*Id.*) Henderson asserts that plaintiff was verbally abusive and threatened her. (*Id.*) Due to this interaction, defendant Henderson wrote a notice of charges against plaintiff. (*Id.*) Defendant Henderson asserts that she was not aware of any litigation or specific grievances that plaintiff had filed. (*Id.*)

In his opposition, plaintiff argues that the charges against him were dismissed and the hearing officer stated "that informing a prison employee that they will be held accountable in court, as plaintiff did with defendant Henderson, does not constitute making a threat." (ECF No. 76 at 7.) Based on this, plaintiff asserts that this is a "classic case of retaliation." (*Id.* at 8.) However, aside

11

from plaintiff's allegations, he does not provide any evidence that defendant Henderson had knowledge of litigation or grievances. Plaintiff's vague and conclusory allegations cannot carry plaintiff's burden in opposing defendant's sworn declarations at the summary judgment stage. *Nelson*, 83 F.3d at 1081-82. Accordingly, plaintiff has not shown that a material dispute exists as to whether defendant Henderson performed the adverse action alleged, and summary judgment in defendant's favor is proper.

**D.     Count III - Eighth Amendment Deliberate Indifference Claim against Defendants Sexton and Scholfield**

In Count III, plaintiff alleges that defendants Sexton and Schofield failed to ensure plaintiff received care from a licensed psychiatrist, which amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 44 at 22.)

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

As to the objective element of the deliberate indifference test, defendants do not dispute that plaintiff's mental health treatment constituted a "serious medical need;" thus, this element has been satisfied and the court will now address the subjective element.

As to the subjective element, plaintiff argues that defendants have been deliberately indifferent to his mental health treatment, as they have failed to ensure plaintiff received psychotropic medications and treatment from a licensed psychiatrist for his bipolar disorder. (ECF No. 44 at 22.) Defendants argue that the evidence shows they were not deliberate indifferent to plaintiff's request for mental health treatment. (ECF No. 67 at 13-15.)

Plaintiff's claim that he has not received proper mental health treatment or medication is belied by the record. Plaintiff's medical records reveal that plaintiff has been seen on numerous occasions by various psychologists, psychiatrist Dr. Grant Lee, and advanced nurse practitioner Teodoro Manalang. (*See* ECF Nos. 69-3, 69-7, 69-8.) Further, plaintiff's medical records reveal

that he was prescribed and received several psychotropic medications. (*See* ECF No. 69-9.) Plaintiff's main contention seems to be that he was seen by psychologists and an advanced nurse practitioner. However, it is common and accepted practice to use nurse practitioners for mental health treatment. (ECF No. 69-3.) While plaintiff may not have agreed with defendants' choice of treatment (use of psychologists and nurse practitioner), this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. Defendants must knowingly *disregard* a medical condition. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Such is not the case here. In sum, defendants' conduct was the opposite of conscious indifference to plaintiff's medical needs. The evidence in the record shows that plaintiff's mental health needs were fully addressed by defendants. Therefore, plaintiff's Eighth Amendment rights were not violated and defendants' are entitled to summary judgment.

**E.     Counts IV and V – Supplemental Jurisdiction Claims against all Defendants**

In Counts IV and V, plaintiff brings state law claims for elder abuse under NRS 41.1395 and inhumane treatment under NRS 209.371, against all defendants. (ECF No. 44 at 23-24.)

Plaintiff asserts that the actions of defendants constitute "the willful neglect and abuse of him, an older, vulnerable person," and these acts have "caused him to suffer physical pain and extreme, prolonged mental anguish to such an extent that it constitutes inhumane treatment." (*Id.*) Plaintiff's accusations are vague and conclusory, entirely devoid of factual detail and similarly lacking in evidentiary support at this stage. As discussed above, plaintiff's medical records show that plaintiff received regular medical and mental health treatment. (*See* ECF Nos. 69-7, 69-8.) There is no evidence in the record supporting plaintiff's claims that he was subjected to elder abuse or inhumane treatment. Further, plaintiff fails to address defendants' argument in his opposition. (ECF No. 76.) Accordingly, because the record clearly shows that plaintiff received adequate medical and mental health treatment, plaintiff's claims fail as a matter of law, and defendants are entitled to summary judgment.

## IV.   CONCLUSION

For good cause appearing, and for the reasons stated above, defendants' motion for summary judgment (ECF No. 67) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and close this case.

**IT IS SO ORDERED.**

DATED: August 15, 2017.

_____
**UNITED STATES MAGISTRATE JUDGE**

15